**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| Dennis Hawkins,<br><br>Plaintiff,<br><br>v.<br><br>Equifax Information Services LLC and TransUnion LLC,<br><br>Defendants. | Civil Action No:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**<u>COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT</u>**

## INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.

2. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

3. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

4. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

5. The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

6. The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flows from inaccurate reporting.

7. Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

8. Dennis Hawkins ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Equifax Information Services LLC ("Equifax") and TransUnion LLC ("TU") (jointly as "Defendants"), regarding erroneous reports of derogatory credit information and Defendants' failure reasonably investigate/reinvestigate the same.

9. While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

10. Unless otherwise stated, all the conduct engaged in by Defendants took place in Indiana.

11. Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

12. Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

13. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and pursuant to 15 U.S.C. § 1681 *et seq*.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendant transacts business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

15. At the time Plaintiff submitted his disputes described herein, Plaintiff resided in this District.

**PARTIES**

16. Plaintiff is an adult individual and is "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

17. Defendant Equifax is a business entity doing business in the Southern District of Indiana.

18. Defendant Equifax's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN 46204.

19. Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

20. Defendant Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

21. Defendant TU is a business entity doing business in the Southern District of Indiana.

22. Defendant TU's registered agent address is: The Prentice-Hall Corporation System Inc., 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

23. Defendant TU regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and uses interstate commerce to prepare and/or furnish the reports.

24. Defendant TU is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

25. Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

26. Plaintiff is informed and believes and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

27. Plaintiff is informed and believes and, on that basis, alleges that at all times mentioned herein each Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth by reason of which each respective Defendant is liable to Plaintiff for the relief prayed for herein.

**FACTUAL ALLEGATIONS**

28. Sometime on or before November 2016, Plaintiff purchased a home that was financed with a mortgage (the "Mortgage").

29. The Mortgage was serviced by Pennymac (the "Pennymac Account").

30. On or about July 3, 2019, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana. Plaintiff's case was subsequently assigned Case Number 19-04936-JJG-13 (the "Bankruptcy").

31. On or about January 21, 2020, Plaintiff's bankruptcy plan was confirmed.

32. On or about June 7, 2021, Plaintiff's bankruptcy plan was modified and approved by the Bankruptcy court.

33. The Pennymac Account was identified in Plaintiff's Chapter 13 Plan as an account to be paid outside of the bankruptcy plan and directly to the creditor.

34. This designation and treatment of the Pennymac Account in the Bankruptcy means that the account remains unaffected by the Bankruptcy and the Chapter 13 Plan specifically notes that direct pay secured creditors, such as Pennymac, are not paid through the Trustee conduit.

35. As modified, Plaintiff's confirmed Chapter 13 Plan included a nonstandard provision that stated:

> For all creditors receiving direct payments outside the Trustee conduit as specified under 8(d) of this plan (direct pay), the original contract terms are not changed or modified. The payment due dates, application of payments, assessment of late fees and attorney fees, and balances owed are controlled by the original contract. The direct pay debts herein described shall not be subject to discharge unless this case is converted to a case under chapter 7, 11, 12 or if the debtor files a motion to modify this Chapter 13 Plan under 11 U.S.C. § 1329 changing the treatment of the specified creditor and or debt.

36. For those creditors subject to the above noted nonstandard provision in the confirmed Chapter 13 Plan, there is an obligation for those who choose to credit report to do so in conformity with the original contractual terms agreed upon between the parties.

37. This means that creditors who credit report must report the balance of the account, along with the recent payment, payments made, and the current status of those payments.

38. Additionally, since Plaintiff is paying Pennymac directly, the balance and payment information on each account should be reflected upon Plaintiff's credit reports, as nothing stands between Plaintiff and the ongoing contractual relationships Plaintiff has with Pennymac.

39. On or about October 30, 2024, Plaintiff received a discharge in his Bankruptcy.

40. The Pennymac Account was not discharged.

41. Plaintiff made monthly payments to Pennymac on the Pennymac Account as agreed during the pendency of his Bankruptcy and has continued to make monthly payments on the Pennymac Account after his Bankruptcy discharge.

42. For several months after discharge, the Pennymac Account was reported by Pennymac, TU, and Equifax as still included in bankruptcy and without a balance or payment information on Plaintiff's respective TU and Equifax credit reports.

43. As a result, Pennymac, TU, and Equifax reported the Pennymac Account on Plaintiff's credit reports in an inaccurate, incomplete, and/or materially misleading way.

44. Once the Pennymac Account was updated to remove the bankruptcy information, the tradeline for the Pennymac Account continued to show no payments made on the Pennymac Account during the pendency of the Bankruptcy—essentially making it appear as though Plaintiff did not make payments on his Mortgage for a five-year period.

45. The reporting of no payments in Plaintiff's payment history made it appear as though Plaintiff was not taking affirmative steps pay the Mortgage during the Bankruptcy when Plaintiff was, thus depriving Plaintiff of the positive and recuperative credit impact that correct payment history reporting would provide Plaintiff.

46. Plaintiff's creditors and potential creditors have accessed Plaintiff's credit reports while the misreporting described herein was on Plaintiff's credit reports and were misinformed by Defendants about Plaintiff's credit worthiness.

***TU's Inaccurate, Incomplete, and/or Materially Misleading Reporting of the Pennymac Account***

47. Upon information and belief, sometime before January 7, 2025, Pennymac and TU were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the Pennymac Account.

48. The Pennymac Account was reported on Plaintiff's TU credit report with no balance, no amount paid, no payment history, and no payment status information.

49. The Pennymac Account also reported on Plaintiff's TU credit report with bankruptcy information, suggesting that the Pennymac Account was still included in or otherwise subject to discharge in the Bankruptcy.

50. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Pennymac Account, Pennymac and TU were incorrectly making it appear as if the Pennymac Account did not have a balance or a positive payment status.

51. Instead, the Pennymac Account reported as though it was closed, with no balance or recent payment information and that the account was discharged in bankruptcy.

52. It is inaccurate, incomplete, and/or materially misleading for Pennymac and TU to report any derogatory information which is inconsistent with the Orders entered by the Bankruptcy court.

53. However, Pennymac and TU either reported or caused to be reported inaccurate information as discussed herein.

***Plaintiff's First TU Dispute***

54. On or after January 14, 2025, Plaintiff sent a letter to TU to dispute Pennymac and TU's reporting of the Pennymac Account on Plaintiff's TU credit report pursuant to 15 U.S.C. § 1681i by notifying TU, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "First TU Dispute").

55. Specifically, Plaintiff explained in the First TU Dispute that the Pennymac Account was paid by Plaintiff directly to Pennymac and was not subject to discharge in his Bankruptcy.

56. Plaintiff further explained that his Bankruptcy did not affect his Mortgage, his Mortgage was not discharged, and his payments on the Pennymac Account were ongoing.

57. Plaintiff requested that TU list the current balance and the ongoing payments Plaintiff was making on the Pennymac Account over the course of his Bankruptcy and after the discharge.

58. Plaintiff attached supporting documents to the First TU Dispute, including his Chapter 13 Plan, Confirmation Order, Pennymac Final Cure Payment, and Discharge Order from the Bankruptcy.

59. TU received Plaintiff's First TU Dispute.

60. Upon receipt of the First TU Dispute, TU was required to conduct a reinvestigation into the Pennymac Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

61. Pursuant to 15 U.S.C. § 1681i, TU had a duty to notify Pennymac of Plaintiff's First TU Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's First TU Dispute for Pennymac to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

62. Upon information and belief, TU notified Pennymac of Plaintiff's First TU Dispute.

63. A reasonable reinvestigation by TU would have indicated that it was reporting the Pennymac Account inaccurately, incompletely, and/or in a materially misleading way.

64. However, after receipt of the First TU Dispute, TU continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's TU credit report.

***TU's Continued Inaccurate, Incomplete, and/or Materially Misleading Reporting after the First TU Dispute***

65. Following Pennymac and TU's respective investigations/reinvestigations into the First TU Dispute, TU issued Plaintiff TU investigation results dated February 19, 2025 (the "First TU Investigation Results").

66. On the First TU Investigation Results, TU failed to correct the inaccurate, incomplete, and/or materially misleading information on the Pennymac Account in response to Plaintiff's First TU Dispute.

67. TU continued to report the Pennymac Account in an inaccurate, incomplete, and/or materially misleading way.

68. TU's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Pennymac Account was negative, with no balance or recent payment information.

69. TU's reporting was also inaccurate, incomplete, and/or materially misleading because it contained a bankruptcy status that made it appear as though the Pennymac Account was still included in the Bankruptcy or otherwise discharged.

70. The Bankruptcy discharge happened approximately four months prior.

71. There was no logical reason to continue to report the Pennymac Account as included in Bankruptcy four months after discharge, particularly when the Pennymac Account was never administered through the Bankruptcy and was always paid directly by Plaintiff.

72. What should have been a positive account with recent payment and balance information was instead reporting as a negative account.

73. TU's continued inaccurate, incomplete, and/or materially misleading reporting and failure to reinvestigate or correct the information on the Pennymac Account was problematic because Plaintiff's dispute included relevant supporting documents, which TU chose to ignore.

74. On a June 26, 2025 TU credit report, the Pennymac Account continued to report in an inaccurate, incomplete, and/or materially misleading way with no balance or recent payment information, along with bankruptcy remarks.

75. TU's reporting of the Pennymac Account now eight months after discharge continued to incorrectly make it appear as though Plaintiff's Mortgage was discharged in the Bankruptcy.

***Plaintiff's Second TU Dispute***

76. On or after July 23, 2025, Plaintiff sent a letter to TU to dispute Pennymac and TU's reporting of the Pennymac Account on Plaintiff's TU credit report for a second time pursuant to 15 U.S.C. § 1681i by notifying TU, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "Second TU Dispute").

77. Specifically, Plaintiff explained in the Second TU Dispute that the Pennymac Account was not subject to discharge in his Bankruptcy and was still open and active.

78. Plaintiff further explained that his Bankruptcy did not affect his Mortgage, his Mortgage was not discharged, and his payments on the Pennymac Account were ongoing.

79. Plaintiff noted that TU's failure to report his payment history and updated payments he makes every month on the Pennymac Account was hurting his credit score and hindering his ability to build new credit.

80. Plaintiff attached supporting documents to the Second TU Dispute, including proof of his entire payment history, Chapter 13 Plan, Confirmation Order, and Discharge Order from the Bankruptcy.

81. TU received Plaintiff's Second TU Dispute.

82. Upon receipt of the Second TU Dispute, TU was required to conduct a reinvestigation into the Pennymac Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

83. Pursuant to 15 U.S.C. § 1681i, TU had a duty to notify Pennymac of Plaintiff's Second TU Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Second TU Dispute for Pennymac to review, to

conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

84. Upon information and belief, TU notified Pennymac of Plaintiff's Second TU Dispute.

85. Upon information and belief, Pennymac received notice of Plaintiff's Second TU Dispute.

86. Pursuant to 15 U.S.C. § 1681s-2(b), Pennymac had a duty to conduct an investigation with respect to the disputed information, and to modify that information appropriately.

87. A reasonable reinvestigation by TU would have indicated that it was reporting the Pennymac Account inaccurately, incompletely, and/or in a materially misleading way.

88. However, after receipt of the Second TU Dispute, TU continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's TU credit report.

***TU's Continued Inaccurate, Incomplete, and/or Materially Misleading Reporting after the Second TU Dispute***

89. Following Pennymac and TU's respective investigations/reinvestigations into the Second TU Dispute, TU issued Plaintiff TU investigation results dated August 15, 2025 (the "Second TU Investigation Results").

90. On the Second TU Investigation Results, TU failed to correct the inaccurate, incomplete, and/or materially misleading information on the Pennymac Account in response to Plaintiff's Second TU Dispute.

91. TU continued to report the Pennymac Account in an inaccurate, incomplete, and/or materially misleading way.

92. While TU removed the bankruptcy information from the Pennymac Account, it failed to update Plaintiff's payment history to show Plaintiff was paying his Mortgage the entire time during his Bankruptcy.

93. Plaintiff provided proof of all of his payments during the pendency of the Bankruptcy, yet TU refused to include that important information on his credit report.

94. What should have been reporting as an account with a strong payment history for years, was instead reporting with sparse payment information and a five-year hole of no payment information.

95. TU's continued inaccurate, incomplete, and/or materially misleading reporting and failure to reinvestigate or correct the information on the Pennymac Account was problematic because Plaintiff's dispute included relevant supporting documents, which TU chose to ignore.

96. On a December 18, 2025 TU credit report, the Pennymac Account continued to report in an inaccurate, incomplete, and/or materially misleading way with years of suppressed or missing payment information.

***Equifax's Inaccurate, Incomplete, and/or Materially Misleading Reporting of the Pennymac Account***

97. Sometime before July 23, 2025, Pennymac and Equifax were reporting numerous inaccurate, incomplete, and/or materially misleading remarks regarding the Pennymac Account.

98. The Pennymac Account was reported on Plaintiff's Equifax credit report with years of missing payment information.

99. By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Pennymac Account, Equifax was incorrectly making it appear as if the Pennymac Account was not being paid during the pendency of Plaintiff's Bankruptcy.

***Plaintiff's Equifax Dispute***

100. On or after July 23, 2025, Plaintiff sent a letter to Equifax to dispute Pennymac and Equifax's reporting of the Pennymac Account on Plaintiff's Equifax credit report pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect, incomplete, and/or materially misleading credit information (the "Equifax Dispute").

101. Specifically, Plaintiff explained in the Equifax Dispute that the Pennymac Account was not subject to discharge in his Bankruptcy and was still open and active.

102. Plaintiff further explained that his Bankruptcy did not affect his Mortgage, his Mortgage was not discharged, and his payments on the Pennymac Account were ongoing.

103. Plaintiff noted that Equifax's failure to report his payment history and updated payments he makes every month on the Pennymac Account was hurting his credit score and hindering his ability to build new credit.

104. Plaintiff attached supporting documents to the Equifax Dispute, including proof of his entire payment history, Chapter 13 Plan, Confirmation Order, and Discharge Order from the Bankruptcy.

105. Equifax received Plaintiff's Equifax Dispute.

106. Upon receipt of the Equifax Dispute, Equifax was required to conduct a reinvestigation into the Pennymac Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

107. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify Pennymac of Plaintiff's Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Equifax Dispute for Pennymac to review, to conduct a reasonable reinvestigation of the disputed information, and to modify the tradeline.

108. Upon information and belief, Equifax notified Pennymac of Plaintiff's Equifax Dispute.

109. A reasonable reinvestigation by Equifax would have indicated that it was reporting the Pennymac Account inaccurately, incompletely, and/or in a materially misleading way.

110. However, after receipt of the Equifax Dispute, Equifax continued to report inaccurate, incomplete, and/or materially misleading information on Plaintiff's Equifax credit report.

***Pennymac and Equifax's Continued Inaccurate, Incomplete, and/or Materially Misleading Reporting after the Equifax Dispute***

111. Following Pennymac and Equifax's respective investigations/reinvestigations into the Equifax Dispute, Equifax issued Plaintiff dispute results dated August 15, 2025 (the "Equifax Dispute Results").

112. On the Equifax Dispute Results, Equifax failed to correct the inaccurate, incomplete, and/or materially misleading information on the Pennymac Account in response to Plaintiff's Equifax Dispute.

113. Equifax continued to report the Pennymac Account in an inaccurate, incomplete, and/or materially misleading way.

114. Equifax failed to update Plaintiff's payment history to show Plaintiff was paying his Mortgage the entire time during his Bankruptcy.

115. Plaintiff provided proof of all of his payments during the pendency of the Bankruptcy, yet Equifax refused to include that important information on his credit report.

116. What should have been reporting as an account with a strong payment history for years, was instead reporting with sparse payment information and a five-year hole of no payment information.

117. Equifax's continued inaccurate, incomplete, and/or materially misleading reporting and failure to reinvestigate or correct the information on the Pennymac Account was problematic because Plaintiff's dispute included relevant supporting documents, which Equifax chose to ignore.

118. On a December 18, 2025 Equifax credit report, the Pennymac Account continued to report in an inaccurate, incomplete, and/or materially misleading way with years of suppressed or missing payment information.

### *The Impact of Inaccurate or Misleading Information on Consumer Reports*

119. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

i. credit or insurance to be used primarily for personal, family, or household purposes;

ii. employment purposes; or

iii. any other purpose authorized under section 1681b.

120. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

121. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, TU, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

122. The FTC Study found that the types of errors on consumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

### *Credit Scoring*

123. The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/.

124. Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to suffer from reduced FICO credit scores.

125. The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

126. The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

127. FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

128. A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

129. Inaccurate, incomplete, and/or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

130. Here, the inaccurate, incomplete, and/or materially misleading reporting of the Pennymac Account adversely affects Plaintiff's FICO score as Plaintiff's credit reports make it appear as though the account was not being paid for years when it actually was.

131. There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; *i.e.*, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

132. Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

***Defendants' Violations of the FCRA and Plaintiff's Damages***

133. It is inaccurate, incomplete, and/or materially misleading fail to report payment information on an account when presented with proof of said payments.

134. It is inaccurate, incomplete, and/or materially misleading to suppress or omit positive and accurate account payment data.

135. It is inaccurate, incomplete, and/or materially misleading to report an account is closed when it is open, and a consumer is paying on it as agreed.

136. It is inaccurate, incomplete, and/or materially misleading to report bankruptcy coding on an account when the consumer is paying on the account directly to the creditor and the account was not discharged in bankruptcy in conformity with the original contractual terms.

137. As evidenced by TU's failure to report accurate information on the Pennymac Account—despite having notice that the account was not discharged in the bankruptcy and had years of

payment information that TU was not reporting—TU failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

138. TU either ignored or failed to review all relevant information on the Pennymac Account and thus failed to ensure maximum possible accuracy of the information concerning the individuals about whom the reports relate.

139. As evidenced by Equifax's failure to report accurate information on the Pennymac Account—despite having notice of years of payment information that Equifax was not reporting—Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

140. Equifax either ignored or failed to review all relevant information on the Pennymac Account and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

141. Additionally, as evidenced by the inaccurate, incomplete, and/or materially misleading re-reporting after Plaintiff sent Defendants written disputes identifying the inaccurate, incomplete, and/or materially misleading information related to the Pennymac Account, Defendants, upon receipt of Plaintiff's disputes, failed to conduct a reasonable reinvestigations and/or investigations with respect to the disputed information as required by 15 U.S.C. § 1681i.

142. Defendants failed to review all relevant information provided by Plaintiff in the disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i.

143. Due to Defendants' failure to reasonably investigate and/or reinvestigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i, thereby

causing continued reporting of inaccurate, incomplete, and/or materially misleading information in violation of 15 U.S.C. § 1681i.

144. By reporting inaccurate, incomplete, and/or materially misleading account information after notice and confirmation of their errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i.

145. Defendants' inaccurate, incomplete, and/or materially misleading reporting on the Pennymac Account—in light of their knowledge of the positive data they could report on the account—was willful. Plaintiff is, accordingly, eligible for statutory damages.

146. Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 71 (2007).

147. Based upon Defendants' knowledge of the account and the data the Defendants possessed on the account, even if Defendants could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under the FCRA.

148. Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to suffer actual damages, including, without limitation: fear of credit denials, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, humiliation, frustration, and emotional distress.

149. Upon information and belief, Plaintiff's TU and Equifax credit reports were published to third parties while the incorrect information on the Pennymac Account was reporting.

150. Instead of those third parties seeing the Pennymac Account as a positive account that Plaintiff was paying on every month, it instead appeared with years of missing payment information.

This inaccurate, incomplete, and/or materially misleading information was published to those third parties.

151. Defendants thus caused Plaintiff a reputational harm akin to defamation.

152. Plaintiff is a disabled veteran who lives alone on a fixed income and has suffered ongoing irritation, frustration, humiliation, knowing that despite working hard to make on time payments, current and potential lenders have viewed Plaintiff's credit reports that fail to reflect Plaintiff's past and ongoing payments on the Pennymac Account.

153. Upon information and belief, while the inaccurate, incomplete, and/or materially misleading information concerning the Pennymac Account appeared on Plaintiff's credit reports, Plaintiff was denied credit to purchase a mower from John Deere.

154. Upon information and belief, while the inaccurate, incomplete, and/or materially misleading information concerning the Pennymac Account appeared on Plaintiff credit reports, Plaintiff was offered credit to purchase a vehicle and a credit card from Capital One, but on terms less favorable than Plaintiff would have been offered had the reporting on the Pennymac Account had been accurate.

155. Upon information and belief, while the inaccurate, incomplete, and/or materially misleading information concerning the Pennymac Account appeared on Plaintiff credit reports, Plaintiff's insurance premiums with State Farm increased.

156. Upon information and belief, while the inaccurate, incomplete, and/or materially misleading information concerning the Pennymac Account appeared on Plaintiff's credit reports, Plaintiff has avoided applying for credit offered while shopping at Home Depot for fear of being denied in public and further damaging his credit score.

157. Plaintiff made all payments on time on the Pennymac Account and made a commitment to pay his other debts as agreed in bankruptcy in the hope of obtaining a fresh start and better

credit, but now the inaccurate, incomplete, and/or materially misleading information concerning the Pennymac Account is preventing that from occurring.

158. Defendants' inaccurate reporting on the Pennymac Account after Plaintiff requested a correction on two occasions, has caused Plaintiff to suffer sleepless nights, anxiety, and an aggravation of painful symptoms arising from pre-existing chronic stomach and hearing impairments.

159. Defendants' inaccurate reporting on the Pennymac Account after Plaintiff requested a correction has caused Plaintiff significant stress and aggravation as the Pennymac Account is by far Plaintiff's largest credit account.

160. Defendants' inaccurate reporting has caused Plaintiff to expend considerable time, effort, and money in Plaintiff's attempts get Defendants to correct the reporting.

161. By reporting inaccurate, incomplete, and/or materially misleading account information, Defendants' acts and omissions have caused in the illegitimate suppression of Plaintiff's FICO credit score and other credit rating model scores.

162. Creating the false impression that the Pennymac Account was not paid as agreed for years creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's credit reports that is engaged in judgment-based lending.

## FIRST CAUSE OF ACTION
## FCRA - 15 U.S.C. § 1681 *et seq.*

163. Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

164. The foregoing acts and omissions constitute numerous and multiple violations of the FCRA, including, but not limited to 15 U.S.C. § 1681e(b) as to TU and Equifax.

165. Defendants TU and Equifax's acts and omissions were in violation of 15 U.S.C. § 1681i as well.

166. The above-described violations by Defendants were willful, allowing Plaintiff to recover under 15 U.S.C. § 1681n.

167. As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) from each Defendant.

168. In the alternative, Defendants were negligent in their actions, which entitled Plaintiff to recover und 15 U.S.C. § 1681o.

169. As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2), from each Defendant.

## REQUEST FOR A JURY TRIAL

170. Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

1. A declaratory judgment that Defendants' actions as discussed herein are unlawful;
2. Plaintiff's actual damages from each Defendant as attributable to that respective Defendant;
3. Statutory damages of not less than $100.00 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), from each Defendant;

4. Punitive damages from each Defendant, pursuant to 15 U.S.C. §1681n(a)(2);

5. An award of costs of litigation and reasonable attorneys' fees from each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) or 15 U.S.C. § 1681n(a)(3); and

6. Any other relief the Court may deem just and proper.

Dated: January 2, 2026

Respectfully Submitted,

By: */s/Richard J. Shea*

Richard J. Shea, Esq., # 21396-53
Sawin & Shea, LLC
4701 N. Keystone Avenue, Suite 210
Indianapolis, IN 46205
Telephone: (317) 255-2600
Facsimile: (317) 255-2905
E-mail: rshea@sawinlaw.com
*Attorney for Plaintiff*